# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE K. GLENN, | : | |
| Plaintiff, | : | |
| | : | No. 1:20-cv-00069 |
| v. | : | |
| | : | (Judge Kane) |
| JOSEPH MATALONI, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the Court are several motions to dismiss and for summary judgment (Doc. Nos. 33, 36, 38, 42, 60) filed by Defendants Joseph Mataloni ("Mataloni"), Renato Diaz ("Diaz"), Anthony Chiavacci ("Chiavacci"), Myron Stanishefski ("Stanishefski"), Stanley Stanish ("Stanish"), Prison Health Services, Inc. ("PHS"), Wexford Health Services, Inc. ("Wexford"), and the Pennsylvania Department of Corrections ("DOC"). The motions are fully briefed and ripe for disposition. The Court will also screen Plaintiff's claims against Defendant Larisa Yarczower ("Yarczower") pursuant to the Prison Litigation Reform Act ("PLRA").[1]

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Tyrone Glenn ("Plaintiff") is currently incarcerated at the State Correctional Institution in Somerset, Pennsylvania ("SCI Somerset"). In 2005, Plaintiff initiated a lawsuit pursuant to 42 U.S.C. § 1983 against Defendants Mataloni, Diaz, and Yarczower, alleging that they had violated his Eighth Amendment rights by failing to provide adequate medical treatment for what Plaintiff described as a "parasitic worm-like creature squirming around inside [his] anal cavity that had mandibles." See Glenn v. Mataloni, No. 1:05-cv-1934, 2005 WL 3159195, at *1 (M.D. Pa. Nov. 28, 2005). In a Memorandum and Order dated November 28,

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

2005, the Court granted Plaintiff leave to proceed in forma pauperis and dismissed his complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  See id.  In doing so, the Court concluded that Plaintiff had failed to set forth an Eighth Amendment claim against Defendants Mataloni, Diaz, and Yarczower because it was "clearly a case where . . . Plaintiff has been given significant medical attention and is simply dissatisfied with the results."  See id. at *3.  On July 13, 2006, the Court denied Plaintiff's motion for reconsideration of the Court's November 28, 2005 Memorandum and Order.  See Glenn v. Mataloni, No. 1:05-cv-1934, 2006 WL 1983167, at *1 (M.D. Pa. July 13, 2006).  On November 2, 2006, the United States Court of Appeals for the Third Circuit dismissed Plaintiff's appeal for failure to prosecute.  See Glenn v. Mataloni, No. 1:05-cv-1934 (M.D. Pa.) (Doc. No. 13).  On December 19, 2019, Plaintiff filed a request for relief pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.  See id. (Doc. No. 14.)  In an Order dated January 21, 2020, the Court denied Plaintiff's request.  See id. (Doc. No. 18.)

Plaintiff initiated the above-captioned action on January 15, 2020 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants.  In an Order dated January 22, 2020, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint upon Defendants.  (Doc. No. 9.)  On February 21, 2020, Defendants Mataloni, Stanishefski, and the DOC filed a motion to revoke Plaintiff's in forma pauperis status, asserting that Plaintiff had previously accrued three "strikes" pursuant to the Prison Litigation Reform Act ("PLRA").  (Doc. No. 19.)  In an Order dated April 2, 2020, the Court denied the motion to revoke Plaintiff's in forma pauperis status and directed Defendants to answer or otherwise respond to the complaint within thirty (30) days.  (Doc. No. 28.)  In an Order dated April 22, 2020, the Court directed Plaintiff to show cause why Defendants Yarczower and PHS should not be dismissed from the

2

above-captioned action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. No.
30.) Plaintiff filed his response to the Court's April 22, 2020 Order on April 29, 2020. (Doc. No.
31.)

On May 1, 2020, Defendants Chiavacci, Diaz, Stanish, and Wexford filed a motion to
dismiss and brief in support thereof. (Doc. Nos. 33, 34.) That same day, observing that
Defendants Chiavacci, Diaz, Stanish, and Wexford raised the issue of whether Plaintiff properly
exhausted his administrative remedies with respect to his claims in accordance with the PLRA,
the Court issued a Paladino Order informing the parties that it would consider the exhaustion
issue in the context of summary judgment and, by doing so, would consider matters outside the
pleadings in its role as factfinder.[2] (Doc. No. 35.) The Court directed Defendants to amend and
supplement their brief to address the issue of administrative exhaustion and provide a statement of
material facts in accordance with Local Rule 56.1. (Id.) On May 4, 2020, Defendants Mataloni,
Stanishefski, and the DOC filed a motion to dismiss (Doc. No. 36) and a motion for summary
judgment on the issue of exhaustion (Doc. No. 38). On May 8, 2020, the Court issued another
Paladino Order directing Plaintiff to respond to the motion for summary judgment within twenty-
one (21) days. (Doc. No. 41.) On May 21, 2020, Defendants Chiavacci, Diaz, Stanish, and
Wexford filed their motion for summary judgment and supporting materials regarding the issue of
exhaustion. (Doc. Nos. 42, 43, 44.) Plaintiff subsequently filed his responses to the motions for
summary judgment (Doc. Nos. 45, 46, 48), and Defendants filed their reply briefs (Doc. Nos. 47,
53).

---

[2] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

In an Order dated June 15, 2020, the Court directed service of Plaintiff's complaint upon PHS at the address provided by Plaintiff in his response to the Court's April 22, 2020 show cause Order.  (Doc. No. 51.)  The Court also directed Defendant DOC to provide under seal any information it may have concerning Defendant Yarczower's current whereabouts for service purposes.  (Id.)  Defendant DOC did so on July 20, 2020.  (Doc. No. 54.)  In an Order dated July 21, 2020, the Court directed the Clerk of Court to issue summonses so that the United States Marshal could serve the complaint upon Defendants PHS and Yarczower.  (Doc. No. 55.)  Defendant PHS subsequently waived service (Doc. No. 58), and the summons issued to Defendant Yarczower was returned as executed on August 10, 2020 (Doc. No. 59).  Defendant Yarczower, however, has not entered an appearance in the above-captioned case.  Defendant PHS filed its motion to dismiss and brief in support on August 14, 2020 (Doc. Nos. 60, 61), and Plaintiff filed his response on September 24, 2020 (Doc. No. 68).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

4

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.      Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint.  See 28 U.S.C. § 1915A(b)(1).  District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See 28 U.S.C. § 1915(e)(2)(B) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.").

A complaint is frivolous if it lacks an arguable basis either in law or fact.  See Mitchell v. Horn, 381 F.3d 523, 530 (3d Cir. 2003) (citing Neitzke v. Williams, 490 U.S. 319, 327-28 (1989)).  When deciding whether a complaint fails to state a claim on which relief may be

6

granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").

### C.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986

F.2d 682 (3d Cir. 1993); <u>Clement v. Consol. Rail Corp.</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse Elec. Co.</u>, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>See</u> <u>Celotex</u>, 477 U.S. at 323; <u>see</u> <u>also</u> <u>Harter v. G.A.F. Corp.</u>, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  <u>See</u> <u>White</u>, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  <u>See</u> <u>id.</u> (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to

be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot

evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se

litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-1384,

2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused

from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-01854,

2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the

Federal Rules of Civil Procedure).

###    D.    Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to

vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon,

331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85

(2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United

States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West

v. Atkins, 487 U.S. 42, 48 (1988)).

### III.   SUMMARY OF PLAINTIFF'S COMPLAINT

In July of 2004, while incarcerated at SCI Retreat, Plaintiff "felt a painful biting sensation and something moving itself around inside [his] medical cavity." (Doc. No. 1 ¶ 10.)  On August 2, 2004, he signed up for sick call and was seen by Defendant Yarczower, who diagnosed hemorrhoids and gave Plaintiff a suppository. (Id.¶¶ 11-12.)  On August 3, 2004, Plaintiff saw Defendant Yarczower again, complaining that he was still experiencing pain and discomfort. (Id. ¶ 13.)  Defendant Yarczower prescribed a laxative, which Plaintiff alleges did not "solve the problem." (Id.)

On August 4, 2004, Plaintiff was seen by Defendants Diaz and Yarczower. (Id. ¶ 14.) They "did a perfunctory visual examination of [Plaintiff's] anus and concluded that [he] had hemorrhoids." (Id.)  Defendant Diaz took a swab and told Plaintiff that "there was no sign of a parasite." (Id. ¶ 15.)  He gave Plaintiff some cream for "some type of fungus." (Id.)  Defendant Diaz also ordered blood and fecal matter tests, which did not reveal the presence of a parasite. (Id. ¶ 16.)  Plaintiff alleges that he had blood in his stool from August 7-13, 2004. (Id. ¶ 18.)  On August 25, 2004, Plaintiff submitted Grievance No. 93738, arguing that medical staff, including Defendants Diaz, Yarczower, and Mataloni, were refusing to provide proper examination and treatment, including the use of a colonoscope. (Id. ¶¶ 19-20; Doc. No. 1-3.)  Plaintiff's grievance was denied, and the denial was upheld during the grievance appeals process. (Doc. No. 1 ¶¶ 21-23, 27.)

Plaintiff continued to complain to Defendants Diaz and Yarczower about his pain and discomfort during his twice-yearly chronic care appointments. (Id. ¶ 34.)  On September 26, 2005, Plaintiff filed the § 1983 lawsuit referenced supra against Defendants Mataloni, Diaz, and Yarczower. (Id. ¶ 35.)  In July of 2006, during chronic care clinic, Defendant Yarczower

performed a digital rectal examination of Plaintiff. (Id. ¶ 36.) She told Plaintiff that his pain and discomfort was from hemorrhoids; Plaintiff alleges that she ignored his suggestion that they be removed. (Id.) In July of 2006, Plaintiff filed a negligence and malpractice complaint in the Court of Common Pleas for Luzerne County, Pennsylvania. (Id. ¶ 37.) The lawsuit was dismissed pursuant to a praecipe for judgment of non pros filed by Defendants Mataloni, Diaz, and Yarczower. (Id. ¶ 38.) Plaintiff continued to complain at his chronic care appointments. (Id. ¶¶ 39-40.) He alleges that he continued to receive the same fecal smear test and that blood was drawn at times. (Id.) Defendants Diaz and Yarczower continued to diagnose hemorrhoids. (Id.)

At some point, Defendants Diaz and Yarcozwer left SCI Retreat. (Id. ¶ 41.) Defendant Mataloni continued to deny Plaintiff's requests for further diagnostic tests. (Id.) In 2008, Plaintiff complained to Defendant Chiavacci about his pain and discomfort. (Id. ¶ 42.) Defendant Chiavacci "did a perfunctory visual examination and diagnosed [Plaintiff] as having hemorrhoids." (Id.) He also started Plaintiff on a stool softener. (Id.) Plaintiff alleges that Defendant Chiavacci "continued the same fecal smear test and consulted with Defendant Mataloni, but nothing more was ever done about [his] pain and discomfort." (Id. ¶ 43.)

In April of 2010, Plaintiff was transferred to the custody of the Virginia Department of Corrections due to overcrowding in Pennsylvania's state prisons. (Id. ¶ 44.) During his time in Virginia, Plaintiff complained about his pain and discomfort, "but nothing was done to determine why [he] was in constant pain." (Id. ¶¶ 44-47.) Plaintiff was transferred back to SCI Retreat in March of 2012. (Id. ¶ 48.) He subsequently engaged in hunger strikes to protest Defendant Mataloni and Chiavacci's failure to provide diagnostic tests. (Id. ¶¶ 49-53.)

On June 21, 2013, after Plaintiff had missed 82 meals, he was transferred to SCI Dallas, where he met Defendant Stanish. (Id. ¶ 54.) Plaintiff told Defendant Stanish about his pain and

discomfort, but Defendant Stanish would not order any diagnostic tests.  (Id.)  He alleges that

Defendants Stanish and Stanishefski to ignore his complaints of pain and discomfort during his

incarceration at SCI Dallas.  (Id. ¶¶ 55-58.)  Plaintiff ended his hunger strike on July 2, 2013 and

returned to SCI Retreat.  (Id. ¶ 59.)  He asserts, however, that Defendants Mataloni and Chiavacci

continued to ignore his complaints of pain and discomfort.  (Id.)  Plaintiff was transferred back to

SCI Dallas in June or July of 2014.  (Id. ¶ 64.)  Subsequently, he saw Defendant Diaz for his

chronic care clinic.  (Id.)  Plaintiff complained about the pain and discomfort, and Defendant Diaz

again told him that he had hemorrhoids and that Plaintiff "couldn't have feeling in that part of

[his] anal cavity."  (Id.)

In August of 2014, Plaintiff was transferred to SCI Somerset.  (Id. ¶ 65.)  Throughout

2015, 2016, and 2017, Plaintiff continued to complain about his pain and discomfort, and medical

staff regularly scheduled blood, urine, and stool samples.  (Id. ¶¶ 66-80.)  On August 2, 2017,

Physician's Assistant ("PA") Kaufman informed Plaintiff that the blood samples taken on July 27,

2017 indicated a raised Prostate-Specific Antigen ("PSA") level.  (Id. ¶ 81.)  PA Kaufman stated

that the raise could indicate prostate cancer.  (Id.)  He performed a digital rectal examination and

"felt a [hardening] of the left lobe of [Plaintiff's] prostate."  (Id. ¶ 82.)  He ordered additional

blood tests for Plaintiff.  (Id.)

Plaintiff saw Dr. Miceli, an oncologist, on October 12, 2017, concerning the PSA results.

(Id. ¶ 83.)  Dr. Miceli told Plaintiff that he had a 28% chance of having prostate cancer and noted

that a biopsy would be scheduled.  (Id.)  Plaintiff subsequently underwent an ultrasound of his

pelvic area and a biopsy.  (Id. ¶¶ 84-87.)  On February 15, 2018, Dr. Miceli told Plaintiff that the

biopsy had revealed cancer.  (Id. ¶ 88.)  He told Plaintiff that he would undergo five (5) weeks of

radiation treatment, Casodex for hormone therapy, and Zoladex implantation under the skin.  (Id.)

Plaintiff subsequently underwent an MRI, CAT scan, and bone scan.  (Id. ¶ 92.)  Dr. Miceli told

Plaintiff that the scans indicated that the prostate cancer had not spread, but that his Gleason score

indicated a greater chance that the cancer could "grow and spread fast."  (Id. ¶¶ 94-95.)

On May 23, 2018, Plaintiff had blood and urine samples taken to check his hormone and

PSA levels.  (Id. ¶ 98.)  On May 30, 2018, PA Kaufman told Plaintiff that his PSA level was

down.  (Id. ¶ 99.)  PA Kaufman checked Plaintiff's left breast "and determined that no lump was

present, but the beginning of gynecomastia was evident."  (Id.)  A week later, Plaintiff saw a Dr.

Ulewicz, a radiation oncologist.  (Id. ¶ 100.)  Dr. Ulewicz told Plaintiff that he would receive

Androgen Deprivation Therapy ("ADT") for three (3) years, External Beam Radiation Therapy

("EBRT"), and Brachytherapy, the implantation of fifty-three (53) radioactive seeds in his

prostate.  (Id. ¶ 101.)  Dr. Ulewicz informed Plaintiff that he required these treatments because of

the "high-risk tumors."  (Id. ¶ 102.)  He also told Plaintiff that side effects included: erectile

dysfunction, hot flashes, fatigue, urinary problems, and shortening of the penis.  (Id.)  Plaintiff

alleges that, to date, he has experienced all of those side effects.  (Id.)  Plaintiff subsequently

began to see psychologist Ms. Donnadio to discuss the diagnosis and effects.  (Id. ¶¶ 103-05.)

On August 16, 2018, PA Kaufman told Plaintiff that blood had been found in stool

samples provided on August 13, 2018.  (Id. ¶ 109.)  On August 20, 2018, Plaintiff began receiving

Flomax for slow and weak urination.  (Id. ¶ 110.)  Plaintiff underwent Brachytherapy on August

27, 2018.  (Id. ¶ 113.)  On October 2, 2018, he saw Dr. Fuhr to check on the radioactive seeds.

(Id. ¶ 115.)  Plaintiff told Dr. Fuhr that he "was still feeling a burning sensation whenever [he]

urinated"; Dr. Fuhr told Plaintiff that "should lessen with time."  (Id.)

On April 16, 2019, Plaintiff saw Dr. Miceli, who informed him that blood samples

indicated that Plaintiff was anemic, which is a side effect of the radiation treatment.  (Id. ¶ 119.)

Plaintiff and Dr. Miceli discussed the side effects from the gynecomastia. (Id. ¶ 120.) Dr. Miceli told Plaintiff that nothing could be done until after he completed ADT treatment. (Id.) Dr. Miceli also discontinued the Casodex dosages. (Id.) Plaintiff also discussed the side effects he was experiencing: erectile dysfunction, hot flashes, mood changes, confusion, fatigue, urination problems, and rectal spasms. (Id. ¶¶ 121-22.) Dr. Miceli indicated that most would subside when hormone treatment stopped but that "time [would] be the determining factor for others." (Id.) Plaintiff also stated that he "felt like [he] was walking around in a fog since [starting] the ADT treatment." (Id. ¶ 121.)

On July 30, 2019, Plaintiff saw Ms. Donnadio to discuss the trauma he was experiencing from feeling breasts on his body. (Id. ¶ 124.) He also told Ms. Donnadio that he "felt like [he] was walking around in a daze all the time." (Id. ¶ 125.) Plaintiff was also seen by Ms. Gochnour, another psychologist, for an annual evaluation on August 8, 2019. (Id. ¶ 126.) In September of 2019, Plaintiff filed grievances concerning Defendants Mataloni, Diaz, Yarczower, Chiavacci, Stanishefski, and Stanish. (Id. ¶ 127.) After submitting his grievances, he remembered that he had filed a grievance against Defendants Mataloni, Diaz, and Yarczower back in 2004. (Id. ¶ 128.)

On October 2, 2019, Plaintiff saw Dr. Delism regarding the side effects from his radiation treatments. (Id. ¶ 129.) Plaintiff reported experiencing the thinning of his skin in the pelvic area, as well as developing cyst-like sores that bleed on his penis. (Id.) Dr. Delism also noted that there were "splits around the head of [Plaintiff's] penis that had begun the process of healing." (Id.) Dr. Delism gave Plaintiff some antibiotic ointment. (Id.) On October 7, 2019, Plaintiff learned that he would have to receive Zoladex every ninety (90) days for a total of three (3) years and would require follow-up care for the rest of his life. (Id. ¶ 131.) On October 15, 2019, Dr.

Miceli informed Plaintiff that his PSA level was zero.  (Id. ¶ 135.)  He told Plaintiff, however, that he would need to continue receiving Zoladex for at least another year and follow-up care for the rest of his life.  (Id. ¶¶ 135-36.)  Plaintiff received denials of his final appeals of his grievances on November 7, 2019.  (Id. ¶ 137.)

Based on the foregoing, Plaintiff raises claims against Defendants for violations of his Eighth Amendment rights for the delay in diagnosing his prostate cancer by failing to provide access to specialists and diagnostic tests.  (Id. at 43-49.)  Plaintiff also asserts that Defendants deprived him of his right "not to have cruel punishment inflicted" pursuant to Article I, Section 13 of the Pennsylvania Constitution.  (Id. at 49-56.)  Finally, Plaintiff appears to assert claims for medical malpractice against Defendants.  (Id.)  As relief, he requests damages.  (Id. at 61-63.)

## IV.   STATEMENT OF MATERIAL FACTS REGARDING EXHAUSTION[3]

Plaintiff has been incarcerated at SCI Somerset since August of 2014.  (Doc. No. 40 ¶ 1.) On October 12, 2017, Plaintiff saw Dr. Miceli, an oncologist, who "allegedly told Plaintiff that he had a 28% chance of having prostate cancer."  (Doc. No. 44 ¶ 3.)  Over the next six (6) months, "Plaintiff saw several healthcare providers and underwent an ultrasound of his pelvic area, digital

---

[3] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Here, Plaintiff filed responses to Defendants' statements of material facts in compliance with Local Rule 56.1.  Accordingly, the Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

rectal examinations[,] and a biopsy of his prostate." (Id. ¶ 4.)  On February 15, 2018, Dr. Miceli

informed Plaintiff that the biopsy indicated cancer.  (Id. ¶ 5; see also Doc. No. 40 ¶ 2.)

DOC Administrative Directive 804 ("DC-ADM 804") sets for the procedure for inmates

to follow to file grievances.  (Doc. Nos. 40 ¶ 5; 44 ¶ 9.)  DC-ADM 804 provides in pertinent part

that inmates must file an initial grievance within fifteen (15) working days of the events at issue.

(Doc. Nos. 40 ¶ 8; 44 ¶ 10.)  Plaintiff submitted two (2) grievances related to the allegations set

forth in his complaint in September of 2019.[4]  (Doc. No. 40 ¶ 6.)  Specifically, on September 9,

2019, Plaintiff filed Grievance No. 823477, directed to Defendants Stanishefski and Stanish.

(Doc. No. 44 ¶ 7.)  The grievance was rejected "because it was not submitted within fifteen (15)

working days after the events upon which it was based."[5]  (Id.)  The rejection of Plaintiff's

grievance was upheld throughout the DC-ADM 804 appeal process.  (Id.; Doc. No. 40 ¶ 9.)  On

September 17, 2019, Plaintiff filed Grievance No. 823825, directed to Defendants Mataloni, Diaz,

Yarczower, and Chiavacci.[6]  (Doc. No. 44 ¶ 8.)  This grievance was also rejected "because it was

not submitted within the fifteen (15) working days after the events upon which it was based."

---

[4] Plaintiff maintains that he filed Grievance No. 93738 and that this grievance "relates back and is included as an administrative exhaustion matter."  (Doc. Nos. 46 ¶ 6; 48 ¶ 6.)

[5] Plaintiff claims that DC-ADM 804 was not an available remedy because he was "impaired due to the side effects of the medications the [D]efendants' agents provide as well as the emotional and psychological effects of the diagnosis."  (Doc. Nos. 46 ¶ 8; 48 ¶ 10.)  He asserts that "as soon as he was able, he complied with said policy."  (Doc. No. 46 ¶ 8.)

[6] Plaintiff denies that Grievance No. 823825 was filed on September 17, 2019, asserting that the "mailbox rule" set forth in Houston v. Lack, 487 U.S. 266 (1988), "states that his filings are considered filed on the day when he handed his mail over to prison authorities."  (Doc. No. 48 ¶ 8.)

(Id.)  The rejection of Plaintiff's grievance was upheld throughout the DC-ADM 804 appeal

process.[7]  (Id.)

## V.      DISCUSSION

Defendants Diaz, Chiavacci, Stanish, and Wexford seek dismissal of Plaintiff's complaint

for the following reasons: (1) Plaintiff has failed to set forth plausible Eighth Amendment claims

for relief; (2) Plaintiff has failed to state a claim under Article I, Section 13 of the Pennsylvania

Constitution; (3) Plaintiff's medical negligence claims are subject to dismissal because of

Plaintiff's failure to file proper certificates of merit; (4) Plaintiff's claims are barred by the statute

of limitations; (5) certain claims are barred by the doctrine of res judicata; and (6) Defendant

Chiavacci has been deceased since 2014.  (Doc. No. 34 at 2.)  Defendants Mataloni, Stanishefski,

and the DOC seek dismissal of Plaintiff's complaint for the following reasons: (1) Defendants

Mataloni and Stanishefski were not deliberately indifferent to Plaintiff's medical needs; (2) the

claims against Defendant Mataloni are barred by res judicata; (3) the claims against Defendants

Mataloni and Stanishefski are barred by the statute of limitations; and (4) the claims against

Defendant DOC are barred by sovereign immunity.  (Doc. No. 37 at 4.)  Defendants Diaz,

Chiavacci, Stanish, Wexford, Mataloni, Stanishefski, and the DOC maintain further that they are

entitled to summary judgment because of Plaintiff's failure to properly exhaust his administrative

remedies, as required by the PLRA, before filing the above-captioned case.  (Doc. Nos. 39, 43.)

Defendant PHS seeks dismissal of Plaintiff's complaint for the following reasons: (1) his claims

are barred by the statute of limitations; (2) his claims are barred by res judicata; (3) he has not set

forth a plausible Eighth Amendment claim against Defendant PHS; (4) there is no private cause of

---

[7] Plaintiff claims that DC-ADM 804 "allow[s] extensions of time at every level for any reason it
deems appropriate."  (Doc. Nos. 46 ¶ 9; 48 ¶¶ 7-8.)

action for damages for alleged violations of the Pennsylvania Constitution; and (5) Plaintiff has not set forth a plausible negligence claim.  (Doc. No. 61 at 2.)  The Court considers these arguments in turn below.

### A.    Claims Pursuant to the Pennsylvania Constitution

In Count II of his complaint, Plaintiff seeks damages based on Defendants' alleged violations of his "right not to have cruel punishment inflicted" under Article I, Section 13 of the Pennsylvania Constitution.  (Doc. No. 1 at 49-56.)  As the Third Circuit has recognized, however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."  See Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011).  Accordingly, the Court will grant Defendants' motions to dismiss with respect to Plaintiff's claims pursuant to the Pennsylvania Constitution.

### B.    Claims Against Defendant Chiavacci

Defendants Diaz, Chiavacci, Stanish, and Wexford seek dismissal of Plaintiff's complaint on the basis that Plaintiff's claims against Defendant Chiavacci are null because Defendant Chiavacci has been deceased since 2014.  (Doc. No. 34 at 25-26.)  They have included a copy of Defendant Chiavacci's obituary in support of their motion.  (Doc. No. 34-1 at 53.)  In light of this document, the Court takes judicial notice of Defendant Chiavacci's death in 2014.  See Hatten v. Pennsylvania, No. 2:13-cv-1302, 2013 U.S. Dist. LEXIS 170381, at *1-2 (W.D. Pa. Nov. 1, 2013) (taking judicial notice of the inmate-petitioner's obituary to dismiss his petition for habeas corpus pursuant to 28 U.S.C. § 2254 as moot).  Because Defendant Chiavacci passed away prior to Plaintiff's initiation of the above-captioned case, Plaintiff was required to name the personal representative of Defendant Chiavacci's estate if he wished to pursue his claims.  See

Darmanchev v. Roytshteyn, 234 F.R.D. 78, 80 (E.D. Pa. 2005).  Plaintiff, however, did not do so.  Accordingly, Defendant Chiavacci is not a proper party to this action, and the Court will grant the motion to dismiss with respect to Plaintiff's claims against him.  See Spencer v. Varano, No. 3:17-cv-2158, 2018 WL 3352655, at *1 n.1 (M.D. Pa. July 9, 2018) (concluding the same); see also Lange v. Burd, 800 A.2d 336, 341 (Pa. Super. 2002) ("A dead man cannot be a party to an action, and any such attempted proceeding is completely void and of no effect.").

### C.    Claims Against Defendant DOC

Plaintiff seeks monetary damages pursuant to 42 U.S.C. § 1983 against Defendant DOC.  The Third Circuit has recognized that the DOC is "entitled to Eleventh Amendment immunity from suit and [is] not [a] person[] subject to suit under 42 U.S.C. § 1983."  See Foye v. Wexford Health Servs., Inc., 675 F. App'x 210, 215 (3d Cir. 2017).  The Court, therefore, will grant the motion to dismiss with respect to Plaintiff's claims pursuant to § 1983 against Defendant DOC.

Moreover, the DOC is statutorily immune from suit with regard to Plaintiff's state law medical malpractice claims.  Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  See 1 Pa. Cons. Stat Ann. § 2310.  The General Assembly has specifically waived sovereign immunity in nine (9) areas, including cases involving medical malpractice claims.  See 42 Pa. Cons. Stat. Ann. § 8522(6).  However, it is well settled that such immunity is waived only for claims asserted against health care employees and not against individuals who are not medical professionals.  See McCool v. Dep't of Corr., 984 A.2d 565, 570 (Pa. Cmwlth. Ct. 2009).  In the instant case, sovereign immunity bars Plaintiff's medical malpractice claims against Defendant DOC because "the DOC itself is not a

health care employee." See Green v. Fisher, No. 1:12-cv-982, 2013 WL 664677, at *6 (M.D. Pa. Feb. 22, 2013); see also Beckett v. Pa. Dep't of Corr., 597 F. App'x 665, 667 (3d Cir. 2015). Thus, Plaintiff's medical malpractice claims against Defendant DOC will also be dismissed pursuant to principles of sovereign immunity.

     **D.**     **Statute of Limitations**

     Defendants Diaz, Stanish, Wexford, Mataloni, Stanishefski, and PHS seek dismissal of Plaintiff's claims against them as barred by the statute of limitations. Defendants Diaz, Stanish, and Wexford maintain that Plaintiff's entire complaint is time-barred because it concerns care that was provided prior to January 14, 2018 and Plaintiff did not initiate the above-captioned case until January 14, 2020. (Doc. No. 34 at 23.) Alternatively, Defendants Diaz, Stanish, and Wexford assert that Plaintiff's claims accrued on October 12, 2017, when he was told that he had a 28% of having prostate cancer, and that his complaint is untimely because he did not file it until January 14, 2020. (Id.) Defendants Mataloni and Stanishefski assert that Plaintiff's claims against them are untimely because they last provided care to Plaintiff no later than August of 2014. (Doc. No. 37 at 6-8.) Defendant PHS maintains that it "has had no role with the DOC since the end of 2012" and, therefore, Plaintiff has brought suit "years after the statute of limitations." (Doc. No. 61 at 18.)

     It is well settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations for personal injury actions for the state in which the alleged violations occurred. See Wilson v. Garcia, 471 U.S. 261, 267 (1985); Urrutia v. Harrisburg Cty. Police Dep't, 91 F.3d 451, 457 n.9 (3d Cir. 1996). In Pennsylvania, the statute of limitations for a personal injury action is two (2) years. See 42 Pa. Cons. Stat. § 5524. A cause of action generally accrues for purposes of the statute of limitations applicable to § 1983 claims when the plaintiff knows or has

reason to know of the injury that constitutes the basis of his cause of action.  See Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).  However, "[t]here is no single accrual rule for all § 1983 claims."  See Devbrow v. Kalu, 705 F.3d 765, 767 (7th Cir. 2013).  Rather, a court "use[s] the rule that applies to the common-law cause of action most similar to the kind of claim the plaintiff asserts."  See id.  In the instant case, Plaintiff contends that Defendants have violated his Eighth Amendment rights and have committed medical malpractice.  "The tort claim most closely analogous to a deliberate-indifference claim premised on a medical error is medical malpractice."  See id. at 768.  Therefore, "[a] § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause. The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known."  See id.; cf. Hahn v. United States, 313 F. App'x 582, 585 (4th Cir. 2008) (noting that for purposes of the Federal Tort Claims Act, a claim for medical malpractice accrues "when a claimant knows of both the existence of the injury and the cause of the injury" (citing United States v. Kubrick, 444 U.S. 111, 123-24 (1979))).

Pennsylvania's statute of limitations for medical malpractice claims is also two (2) years. See id., § 5524(7).  In Pennsylvania, the discovery rule is "often applied in medical malpractice and latent disease cases in which the plaintiff is unable to discover his or her injury until several years after the tort occurred."  See Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006).  The rule tolls the accrual of the limitations period when the plaintiff is unable, "despite the exercise of due diligence, to know of the injury or its cause."  See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).  Pursuant to the discovery rule, the limitations period "does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he

has been injured and (2) that his injury has been caused by another party's conduct.'"  See Mest, 449 F.3d at 510 (quoting Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003)).

 "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).  In the instant case, construing the facts set forth in the complaint in the light most favorable to Plaintiff, as the Court must do on a motion to dismiss, the Court cannot agree with Defendants that a statute of limitations defense is apparent on the face of the complaint.  Plaintiff maintains that Defendants violated his Eighth Amendment rights and committed medical malpractice by failing to timely diagnose and treat his prostate cancer.  (Doc. No. 1.)  In concluding that a statute of limitations defense is not facially apparent, the Court finds the United States Court of Appeals for the Seventh Circuit's decision in Devbrow to be instructive.  In Devbrow, the inmate-plaintiff brought an Eighth Amendment deliberate indifference claim against medical providers, alleging that "their delay in ordering a prostate biopsy prevented the diagnosis of his cancer until after it had metastasized."  See Devbrow, 705 F.3d at 767.  The district court entered judgment for the defendants, finding that the two-year applicable limitations period had commenced on April 27, 2005, when Devbrow was referred for a biopsy.  See id.  The Seventh Circuit reversed, concluding that "Devbrow learned of his injury and its cause when the disease was diagnosed."  See id. at 769.  Therefore, "[t]he two-year limitations period . . . started no earlier than October 21, 2005."  See id.

In order to take advantage of the discovery rule, a plaintiff must have exercised "due diligence" in investigating his physical condition.  See Bolus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991).  In the instant case, Plaintiff maintains that he was not diagnosed with prostate cancer until February 15, 2018.  (Doc. No 1 ¶ 88.)  "Unlike a person at liberty, during the [years] preceding

his cancer diagnosis, [Plaintiff's] ability to investigate and ascertain a delay in diagnosis would have been extremely limited."  Bishop v. Wexford Health Sources, Inc., No. 1:17-cv-60, 2019 WL 500050, at *10 n.12 (W.D. Pa. Feb. 8, 2019).  Application of the discovery rule as well as Devbrow suggest that Plaintiff's claims, therefore, accrued as of February 15, 2018.  See Devbrow, 705 F.3d at 769; Pagliaroli v. N.J. Dep't of Corr., No. 18-12412 (FLW) (TJB), 2020 WL 1272121, at *5 n.10 (D.N.J. Mar. 17, 2020) (citing Devbrow); Waters v. The GEO Group, Inc., No. 2:15-cv-282, 2016 WL 4373717, at *4-5 (E.D. Va. Aug. 10, 2016) (citing Devbrow to conclude that allowing the inmate-plaintiff to amend his complaint would not be futile because his claims did not accrue until he was diagnosed with lymphoma and, therefore, his cause of action was timely filed).  Defendants' arguments here focus "on when the[ir] actions . . . allegedly occurred, and not when Plaintiff discovered his physical injury and its cause.  Thus, the Court does not find [these] argument[s] to be convincing."  See Waters, 2016 WL 4373717, at *5.

In sum, the Court concludes that, construing the allegations of the complaint in the light most favorable to Plaintiff, his claims accrued as of February 15, 2018, when he was diagnosed with prostate cancer.  Plaintiff filed his complaint in the above-captioned case on January 8, 2020, the date on which he mailed it to the Court for filing.  (Doc. No. 1 at 77); see Houston v. Lack, 487 U.S. 266, 276 (1988).  Thus, Plaintiff's complaint was filed prior to the expiration of the applicable statute of limitations.  Accordingly, the Court declines to grant Defendants' motions to dismiss on the basis that Plaintiff's claims against them are time-barred.[8]

---

[8] In his response to Defendant PHS's motion to dismiss, Plaintiff maintains that the continuing violations doctrine applies to render his complaint timely filed.  (Doc. No. 68 at 4-6.)  Under the continuing violations doctrine, a plaintiff can bring suit for actions that occurred outside of the applicable limitations period if "a defendant's conduct is part of a continuing practice [and] . . . the last act evidencing the continuing practice falls within the limitations period."  See Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (internal quotation marks and citation omitted).

E.       **Res Judicata**

As noted supra, Defendants Mataloni, Diaz, and PHS assert that Plaintiff's claims against them are barred by doctrine of res judicata.  The doctrine of res judicata precludes a party from relitigating the same claims against the same parties after those claims have already been decided on the merits.  See Chen v. Fairfield Twp., 354 F. App'x 656, 658 (3d Cir. 2009).  The following three (3) elements must be met for the doctrine to apply: (1) a final judgment on the merits must have been rendered in a prior suit; (2) the same parties or their privies must have been involved in both suits; and (3) the subsequent suit must be based on the same cause of action as the original.  See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991).  Likewise, in Pennsylvania:

> Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies.  The doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein.  Similarly, [t]he doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit.

Mariner Chestner Partners, L.P. v. Lenfest, 152 A.3d 265, 286 (Pa. Super. 2016) (internal citations and quotation marks omitted).  Res judicata may be raised in a motion to dismiss when its applicability is apparent on the face of the complaint.  See Rycoline Prods., Inc. v. C&W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

In the instant, the first element set forth above exists.  By granting Plaintiff leave to proceed in forma pauperis and dismissing Plaintiff's complaint against Defendants Mataloni and Diaz for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), this Court entered a

---

Given the Court's conclusion that Plaintiff's complaint is timely, it is unnecessary to determine whether the continuing violations doctrine applies to Plaintiff's claims.

final judgment on the merits in Plaintiff's prior suit.  See Porter v. Cancelmi, 318 F. App'x 48, 50 n.2 (3d Cir. 2008).  Thus, the first factor is satisfied.

With respect to the second factor, the Third Circuit has explained privity to be "merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata."  See Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004) (quoting EEOC v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990)); see also Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999) (noting that the doctrine prohibits successive suits against the same defendants and those in privity with them based on the same underlying events).  In the instant case, the second factor is clearly satisfied with respect to Defendants Diaz and Mataloni because Plaintiff named them as Defendants in his prior suit and the above-captioned case.  With respect to Defendant PHS, Plaintiff alleges that Defendant PHS is "a private corporation, formerly commissioned by the Pennsylvania Department of Corrections to provide medical care to prisoners housed in state correctional facilities."  (Doc. No. 1 ¶ 7.)  Such a contractual relationship is sufficient to establish privity between Defendants Diaz and Mataloni and Defendant PHS.  See, e.g., McCarroll v. U.S. Bureau of Prisons, No. 3:11-cv-934 (VLB), 2012 WL 3940346, at *9 (D. Conn. Sept. 10, 2012).  Thus, Defendant PHS had "a sufficiently close relationship to the original defendant[s] to justify preclusion."  See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995); see also West v. Coupe, No. 14-1252-SLR, 2014 WL 6784319, at *3 (D. Del. Nov. 30, 2014) (dismissing pro se prisoner's § 1983 complaint as barred by res judicata and noting that "the addition of new defendants to those plaintiff named before does not change this conclusion because they are all prison officials or medical personnel in privity with one another").

With respect to the third factor, courts "take a 'broad view' of what constitutes the same cause of action."  See Blunt v. Lower Merion School Dist., 767 F.3d 247, 277 (3d Cir. 2014) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 261 (3d Cir. 2010)).  Moreover, a res judicata analysis "does not depend on the specific theory invoked, but rather [on] 'the essential similarity of the underlying events giving rise to the various legal claims.'"  See Elkadrawy v. Vanguard Grp., Inc., 584 F.3d 169, 173 (3d Cir. 2009) (quoting Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982)).  In determining whether the third factor is met for purposes of res judicata, courts consider the following: "(1) whether the acts complained of and the demand for relief are the same . . .; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . .; and (4) whether the material facts alleged are the same."  See United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984) (internal citations omitted).  "It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions."  Sheridan, 609 F.3d at 261.

Plaintiff responded only to Defendant PHS's motion to dismiss, asserting that Defendant PHS is "mischaracterize[ing] [his] current action."  (Doc. No. 68 at 6.)  Plaintiff maintains that his prior suit "was based on Plaintiff thinking he had a 'parasitic worm-like creature squirming around inside his anal cavity that had mandibles.'"  (Id. at 6-7.)  He argues that his current suit, however, "is based on the diagnosis of prostate cancer and PHS and their agents failing to make that diagnosis throughout the years Plaintiff was under their care after September 2005."  (Id. at 7.)

The Court does not agree with Plaintiff that the above-captioned case presents a sufficiently different cause of action than his prior suit such that res judicata would not apply.  In his previous suit, Plaintiff alleged that Defendants Mataloni, Diaz, and Yarczower violated his

Eighth Amendment rights by demonstrating deliberate indifference to his anal pain and discomfort.  See Glenn, 2005 WL 3159195, at *1.  At that time, Plaintiff thought that his pain and discomfort was caused by a parasite.  See id.  Plaintiff asserted that Defendants Mataloni, Diaz, and Yarczower had "prevented [him] from receiving adequate medical diagnosis and treatment and denied access to a physician capable of evaluating [his] needs."  See id. at *2.  In the instant suit, Plaintiff again maintains that Defendants Diaz and Mataloni violated his Eighth Amendment rights and committed medical malpractice by failing to adequate diagnose and treat his anal pain and discomfort, which Plaintiff states was later diagnosed as prostate cancer.  (Doc. No. 1.)  Upon consideration of the two lawsuits, it is clear that they arise out of the same set of facts: Defendants' provision of medical care for Plaintiff's anal pain and discomfort.  Although Plaintiff alleges that Defendants Diaz, Mataloni, and PHS continued to provide treatment since the conclusion of Plaintiff's prior lawsuit, "the ongoing treatment is a continuation of the same series of transactions, not a new set of facts."  See Tanner v. Kenney, No. 10-1039, 2011 WL 2414535, at *2 (W.D. Wash. May 6, 2011), report and recommendation adopted, 2011 WL 2412929 (June 14, 2011); see also Tester v. Pallito, No. 2:19-cv-146-cr-jmc, 2020 WL 2813607, at *7 (D. Vt. Mar. 9, 2020) (concluding that a "new alleged fact" did not change the conclusion that the identical issue raised by the inmate-plaintiff "was litigated and decided in a previous proceeding"), report and recommendation adopted, 2020 WL 2793164 (May 29, 2010).

In sum, the Court previously concluded that Defendants Diaz and Mataloni were not deliberately indifferent to Plaintiff's Eighth Amendment rights because "Plaintiff ha[d] been given significant medical attention and [was] simply dissatisfied with the results."  See Glenn, 2005 WL 3159195, at *3.  Plaintiff, therefore, "is precluded from relitigating the adequacy of his medical care" provided by Defendants Diaz and Mataloni.  See Tester, 2020 WL 2813607, at *7.

Moreover, Plaintiff is barred from litigating his claims against Defendant PHS because of Defendant PHS's privity with Defendants Diaz and Mataloni.  The Court, therefore, will grant the motions to dismiss with respect to Plaintiff's claims against Defendants Diaz, Mataloni, and PHS based upon the doctrine of <u>res judicata</u>.

### F.      Failure to State a Claim for Relief

#### 1.      Eighth Amendment

Moving Defendants also seek dismissal of Plaintiff's complaint on the basis that he has not pled plausible Eighth Amendment claims against them.  (Doc. Nos. 34, 37, 61.)  As discussed <u>supra</u>, the Court has concluded that Plaintiff's claims against Defendants Diaz, Mataloni, and PHS are barred by the doctrine of <u>res judicata</u>.  The Court, therefore, will focus on whether Plaintiff had stated plausible Eighth Amendment claims against Defendants Stanish, Stanishefski, and Wexford.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  <u>See</u> <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004); <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834, 837; <u>Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  See Farmer, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  See Rouse, 182 F.3d at 197.

Because only egregious acts or omissions may violate this standard, mere medical malpractice will not result in an Eighth Amendment violation.  See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment[,] his behavior will not violate a prisoner's constitutional rights.").  If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician.  See Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).  Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference.  See

Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d

Cir. 1987).  Moreover, a prison doctor's use of a treatment regimen different than that prescribed

by a private physician does not necessarily amount to deliberate indifference.  See Johnson v.

Cash, 557 F. App'x 102, 104 (3d Cir. 2013) (citing McCracken v. Jones, 562 F.2d 22, 24 (10th

Cir. 1977)).  The question is, therefore, "whether the defendant has provided the plaintiff with

some type of treatment, despite whether it is what plaintiff wants."  See Jacobs v. Lisiak, No. 15-

00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335,

1339 (M.D. Pa. 1988).

Defendant Stanish maintains that Plaintiff's Eighth Amendment claims against him are

subject to dismissal because they amount to mere disagreements with his medical treatment and

because he has failed to allege that Defendant Stanish was deliberately indifferent to his needs.

(Doc. No. 34 at 13-16.)  The Court disagrees with Defendant Stanish.  Plaintiff alleges that,

although he told Defendant Stanish "about the pain and discomfort [he had] experienced inside

[his] anal cavity for 9 years," Defendant Stanish refused to order any diagnostic tests.  (Id. ¶ 54.)

Construing this allegation in the light most favorable to Plaintiff, as the Court must do for

purposes of a motion to dismiss, the Court concludes that Plaintiff has alleged an adequate Eighth

Amendment claim against Defendant Stanish at this time.  See Rouse, 182 F.3d at 197 (noting

that deliberate indifferences may exist when an official delays necessary medical treatment or

prevents a prisoner from receiving needed or recommended treatment).

In his complaint, Plaintiff alleges that Defendant Stanishefski was the Correctional Health

Care Administrators ("CHCA") for SCI Retreat and SCI Dallas.  (Doc. No. 1 ¶¶ 1, 5.)  Defendant

Stanishefski maintains that they he is not medical personnel and, as an administrator, he "cannot

be held to be deliberately indifferent when the Plaintiff was receiving treatment from prison

medical officials throughout." (Doc. No. 37 at 5.) The Third Circuit has concluded that CHCAs

are "administrators, [and] not doctors." See Thomas v. Dragovich, 142 F. App'x 33, 39 (3d Cir.

2005). Thus, for Plaintiff to state a claim against Defendant Stanishefski, Plaintiff must allege

that he possessed actual knowledge or a reason to believe that "prison doctors or their assistants

[were] mistreating (or not treating)" him. See Spruill, 372 F.3d at 236. In the instant case,

Plaintiff's complaint alleges that Plaintiff complained to Defendant Stanishefski about his anal

pain and discomfort and that Defendant Stanishefski refused to perform further diagnostic testing.

(See generally Doc. No. 1.) At this time, therefore, the Court concludes that Plaintiff has set forth

a plausible claim that Defendant Stanishefski possessed actual knowledge or a reason to believe

that "prison doctors or their assistants [were] mistreating (or not treating)" him. See Spruill, 372

F.3d at 236. Accordingly, the Court declines to dismiss Plaintiff's Eighth Amendment claims

against Defendant Stanishefski on the basis that Plaintiff has failed to state a claim for relief

against him.

Under § 1983, private corporations, such as Wexford, contracted to provide health care for

inmates cannot be held liable pursuant to respondeat superior; instead, a plaintiff must allege that

the entity had a policy, practice, or custom that caused his or her injury. See Shade v. Stanish,

No. 1:19-cv-1429, 2020 WL 869748, at *7 (M.D. Pa. Feb. 21, 2020); see also Carpenter v.

Kloptoski, No. 1:08-cv-2233, 2010 WL 891825, at *8 (M.D. Pa. Mar. 10, 2020). In the instant

case, Plaintiff alleges that Defendant Wexford, "as a matter of official corporate policy or

custom," violated Plaintiff's rights by denying him access to a specialist and certain diagnostic

testing to ascertain the cause of his anal pain and discomfort. (Doc. No. 1 ¶¶ 156.) To satisfy the

pleading standard, however, Plaintiff "must identify a custom or policy, and specify what exactly

that custom or policy was." See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

Plaintiff fails to specify the specific customs or policies that he alleges Defendant Wexford put in place to deny him certain medical care.  Plaintiff's failure to do so is fatal to his Eighth Amendment claims.  See id.  The Court, therefore, will grant the motions to dismiss with respect to Plaintiff's Eighth Amendment claims against Defendant Wexford.

### 2.      Medical Malpractice

Defendants Stanish and Wexford assert further that Plaintiff's medical malpractice claims are subject to dismissal because of his failure to file proper certificates of merit.  (Doc. No. 34 at 18-20.)  In Pennsylvania, medical malpractice is "broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services."  See Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa. 2003).  A plaintiff raising a medical malpractice claim must prove the following elements: "(1) the physician owed a duty to the patient; (2) the physician breached the duty; (3) the breach was the proximate cause of the harm suffered; and (4) the damages suffered were a direct result of the harm."  See Brown v. Hahnemann Univ. Hosp., 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014).

Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, plaintiffs seeking to raise medical malpractice claims must file a valid certificate of merit.  That rule states in pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either []
>
> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill[,] or knowledge exercised or exhibited in the treatment, practice[,] or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a). This requirement applies with equal force to counseled complaints and to pro se medical malpractice actions brought under state law. See Hodge v. Dep't of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit); Levi v. Lappin, No. 07-1839, 2009 WL 1770146, at *1 (M.D. Pa. June 22, 2009). Thus, a certificate of merit must affirmatively demonstrate "either that (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill[,] or knowledge exercised or exhibited in the treatment, practice[,] or work that is the subject of the complaint, fell outside acceptance professional standards and that such conduct was a cause in bringing about the harm, or . . . (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." See Bresnahan v. Schenker, 498 F. Supp. 2d 758, 761-62 (E.D. Pa. 2007).

Defendants Stanish and Wexford maintain that "pursuant to Pennsylvania law, a Certificate of Merit pursuant to Pa. R. Civ. P. 1042.3(a)(1) and/or 1042.3(a)(2) is clearly required to support the Plaintiff's claims" against them because the "propriety of . . . medical tests and examinations and whether the care providers reached an appropriate diagnosis relative to Plaintiff's complaints raise questions of medical judgment that will require an expert to explain." (Doc. No. 34 at 19.) They assert that Plaintiff has filed certificates of merit indicating that "expert testimony is not required" and, therefore, Plaintiff's certificates of merit are improper and should be stricken, leading to the dismissal of his medical malpractice claims. (Id. at 19-20.)

33

This Court, however, has previously concluded that a plaintiff's compliance with Rule 1042.3, by "attesting that expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim," is "not fatal at this stage of the proceedings [i.e., a pending motion to dismiss]." See Moore v. Wetzel, No. 1:18-cv-1523, 2019 WL 1397405, at *13 (Mar. 6, 2019), report and recommendation adopted, 2019 WL 1383631 (M.D. Pa. Mar. 27, 2019).  As the Third Circuit has noted:

> There is no basis in Pennsylvania law that would permit a district court to reject a filing under Rule 1042.3(a)(3) in favor of one filed under Rule 1042.3(a)(1).  Pennsylvania law expressly allows a plaintiff to proceed on the basis of a certification that expert testimony will not be required to prove h[is] claim.  Of course, the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent "exceptional circumstances."  Pa. R. Civ. P. 1042.3(a)(3), Note.  A filing under this rule allows the case to proceed to discovery, leaving the consequence of [the plaintiff's] decision to be dealt with at a later stage of the litigation, such as summary judgment or trial.

See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011).  The Court, therefore, declines to strike Plaintiff's certificates of merit and dismiss his medical malpractice claims on this basis alone.

### G.    Administrative Exhaustion

Defendants Mataloni, Diaz, Chiavacci, Stanishefski, Stanish, Wexford, and the DOC also seek summary judgment on the basis that Plaintiff did not properly exhaust his administrative remedies prior to initiating the above-captioned case.  (Doc. Nos. 38, 42.)  As discussed supra, the Court has concluded that Plaintiff's claims against Defendants Mataloni, Diaz, Chiavacci, the DOC, and Wexford are subject to dismissal.  The Court, therefore, will focus on whether Plaintiff exhausted his administrative remedies with respect to his claims against Defendants Stanishefski and Stanish.

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely

manner are barred from subsequently litigating claims in federal court.  See, e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused.  An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  See Harris, 149 F. App'x at 59.  Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  See Warman, 49 F. App'x at 368.  Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust.  See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the

law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." See id. at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

See Hardy v. Shaikh, 959 F.3d 578, 588 (3d Cir. 2020).

In the instant case, Defendants Mataloni, Diaz, Stanishefski, Stanish, Wexford, and the DOC maintain that they are entitled to summary judgment because Plaintiff failed to properly

exhaust his administrative remedies with respect to his § 1983 claims.[9]   (Doc. Nos. 39, 43.)   As

noted supra, DC-ADM 804, which sets forth the administrative grievance procedure, provides that

inmate must file an initial grievance within fifteen (15) working days of the events at issue.   (Doc.

Nos. 40 ¶ 8; 44 ¶ 10.)   Plaintiff submitted two (2) grievances related to the allegations set forth in

his complaint in September of 2019.   (Doc. No. 40 ¶ 6.)   Both were rejected at initial review

because they were not submitted within fifteen (15) working days.   (Doc. No. 44 ¶¶ 7-8.)   These,

rejections were upheld throughout the grievance appeal process.   (Id.)   As noted above, the "filing

[of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not

satisfy the PLRA's exhaustion requirement.   See Woodford v. Ngo, 548 U.S. 81, 90 (2006).

    Plaintiff offers several explanations in an attempt to excuse his untimely grievances and

suggest that he has exhausted his administrative remedies.   First, Plaintiff suggests that DC-ADM

804 allows officials to "extend the time to file a grievance, so the grievance rejection could have

been overturned at every level [he] appealed."   (Doc. No. 1 at 70.)   Plaintiff is correct that the

DC-ADM 804 provides that at each level of review, time extensions will be considered on a case

by case basis.   (Doc. No. 45 at 18-21.)   At each level, however, the inmate must notify the

appropriate officials of the reason for the delay.   (Id.)   Plaintiff, however, has provided no

evidence that he actually requested time extensions for his grievances.   Moreover, the DOC does

not have an obligation to grant all requests for an extension of time.   Thus, the fact that DOC

---

[9] While not addressed by the parties, the Court notes that Pennsylvania's statute governing
prisoner litigation, set forth in 42 Pa. Cons. Stat. Ann. § 6601 et seq., "not the federal PLRA,
applies to a prisoner's state law claims."  See Barclay v. Washington, No. 14-6257, 2015 WL
6102344, at *3 (E.D. Pa. Oct. 15, 2015).   Unlike the federal PLRA, Pennsylvania does not require
prisoners to exhaust claims arising due to alleged violations of state law prior to initiating a
lawsuit.  See Paluch v. Palakovich, 84 A.3d 1109, 1113 (Pa. Commw. Ct. 2014).

officials did not grant Plaintiff extensions of time with respect to his grievances does not excuse his untimely submissions.[10]

Second, Plaintiff argues that Grievance No. 93738, which he submitted on August 25, 2004, placed Defendants "on notice about their deliberate indifference, unnecessary and wanton infliction of pain, and medical malpractice due to their failure to properly examine, diagnose, and treat his serious medical need." (Doc. No. 45 at 3.) Plaintiff maintains that under the continuing violations doctrine, his 2019 grievances relate back to his 2004 grievance and that his 2004 grievance is, therefore, sufficient to exhaust his claims against Defendants. (Id. at 4-7.)

"In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013); Parzych v. Prison Health Servs. Inc., 627 F.3d 1215, 1219 (11th Cir. 2010) (noting that a prisoner is "not required to initiate another round of the administrative grievance process on the exact same issue each time" an alleged deprivation occurs). "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." Turley, 729 F.3d at 650. Recently, however, the Seventh Circuit declined to apply Turley's continuing violations theory in a case involving an inmate's complaints about treatment he received for an extended eye condition that the inmate believed required surgery. See Barrow v. Wexford Health Sources, Inc., 793 F. App'x 420, 422-23 (7th Cir. 2019). In that matter, when the prison's medical director recommended delaying the surgery, the inmate filed two (2) grievances over the delay. See id. at 422. Eight (8)

_____

[10] In his grievances, Plaintiff argued that because his prostate cancer diagnosis was not confirmed until February 15, 2018, he had until February 15, 2020 to file his grievances. (Doc. No. 1-19 at 5, 12.) Plaintiff, however, is confusing the applicable statute of limitations for the claims asserted in his complaint with the time limits for the grievance procedure set forth in DC-ADM 804.

months after the inmate submitted the second grievance, a new medical director began work at the prison, and the inmate received the surgery seven (7) months later.  See id.  The inmate sued the new director for deliberate indifference.  See id.  The Seventh Circuit, however, concluded that the inmate's previously-filed grievance could not serve to exhaust his claims against the new medical director because they concerned events that preceded his employment at the prison.  See id. at 423.

In the instant case, Plaintiff alleges that "Defendants became aware of [his] request for medical care for his chronic condition back in 2004 but did nothing about it."  (Doc. No. 45 at 7.) Defendant Stanishefski maintains that Plaintiff "cannot use his 2004 grievance to exhaust as to this case, since any claims from his 2004 grievance were disposed of in his prior lawsuit."  (Doc. No. 47 at 2.)  Defendant Stanish argues that Plaintiff has "failed to assert a violation that is continuing in nature" such that Plaintiff's 2004 grievance cannot satisfy the exhaustion requirement.  (Doc. No. 53 at 2-3.)  Although Plaintiff cited the Turley case in his responses to Defendants' motions for summary judgment, Defendants have not addressed its applicability to the DOC's grievance procedure.  Nevertheless, the Court cannot agree with Plaintiff that his 2004 grievance served to Place Defendants Stanishefski and Stanish on notice of his issues regarding his medical care because their conduct had not yet had any effect upon him.  See Barrow, 793 F. App'x at 422-23; Reed v. Larson, No. 18-cv-1182-JPG, 2019 WL 6769319, at *3 (S.D. Ill. Dec. 12, 2019).

Finally, Plaintiff maintains that "equitable considerations should apply" to excuse his untimely grievances and to consider his claims to be exhausted.  (Doc. No. 45 at 12-15.) Specifically, Plaintiff asserts that proper exhaustion should be excused "due to his illness, prostate cancer, and the side effects of the medications . . . the [Defendants'] agents provided to treat said

illness." (Id. at 14.)  Specifically, Plaintiff maintains that his medications "clouded" his mind and that he was not clear-minded enough to file his grievances until his five (5) months after his Casodex prescription was continued on April 16, 2019. (Id. at 14-15.)  In response, Defendants provide evidence that Plaintiff was able to file several other grievances between February of 2018 and September of 2019, "showing the untruth to his claim that he was physically or mentally unable to file a timely grievance as to the issues in this case." (Doc. Nos. 47 at 3; 47-1; 53 at 4.)

Aside from the exception that administrative remedies must be made available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" See Ross, 136 S. Ct. at 1856.  The Third Circuit has suggested that an inmate may raise an unavailability argument suggesting that the severity of his injuries prevented him from filing a timely grievance. See Berry v. Klem, 283 F. App'x 1, 5 (3d Cir. 2008).  Likewise, the United States Court of Appeals for the Fifth Circuit has held that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies on the untimely filing of the grievance." See Days v. Johnson, 322 F.3d 863, 867-68 (5th Cir. 2003), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007).  At least one court has applied Days to an inmate's claim that administrative remedies were rendered unavailable to him because his "mind was too clouded by his documented illness to allow him to pursue his administrative remedies immediately upon his return to the institution's hospital." See Macahilas v. Taylor, No. CIV S-06-0502 GEB KJM P, 2008 WL 220364, at *4 (E.D. Cal. Jan. 25, 2008).

Plaintiff cites Macahilas to support his argument that "his mind was clouded due to his physical illness in addition to having his mind clouded by the side effects of the medications

prescribed." (Doc. No. 45 at 14.) He maintains that he "conveyed his symptoms to his treatment team on multiple occasions." (Id.) Plaintiff has also provided declarations from three (3) of his fellow inmates to support his contention. (Doc. No. 1-20.) Inmate Joseph Scott states that "as time went on, [he] realized the medication [Plaintiff] was taking was really messing with him." (Id. at 2.) Inmate Richard Hollihan asserts that "[a]fter a few weeks or months . . ., [Plaintiff] started complaining about how the cancer medications were making him feel." (Id. at 3.) Finally, inmate Henry Washington notes that in the months that followed Plaintiff's diagnosis, Plaintiff "would complain to [him] that the medications and the radiation treatments had him walking around dazed and confused." (Id. at 5.)

Upon consideration of the foregoing, the Court concludes that Plaintiff has not sufficiently demonstrated that equitable considerations should apply to excuse his untimely grievances and lack of proper exhaustion. As noted supra, Plaintiff needed to file his grievances within fifteen (15) days of the events complained of. In his grievances, Plaintiff maintained that he was diagnosed with prostate cancer on February 15, 2018 and that Defendants' failure to adequately diagnose and treat him led to the delayed diagnosis, which then led to Plaintiff needing more aggressive treatment. (Doc. No. 1-19.) Plaintiff, therefore, had no later than March 9, 2018, to file his initial grievance concerning these events. See Talley v. Wetzel, No. 3:15-cv-1698, 2020 WL 5645919, at *4 (M.D. Pa. Sept. 22, 2020) (suggesting that the fifteen (15) working days set forth in DC-AD 804 does not include weekends and holidays). Plaintiff has cited no evidence to the Court suggesting that his mind was so clouded from his treatment during those fifteen (15) days such that he was unable to file his grievances on or before March 9, 2018. Indeed, Plaintiff himself avers that he only started to complain about the side effects of his medication on May 30, 2018, approximately three (3) months later. (Doc. No. 1 ¶ 99.) Even so, Defendants have

presented evidence that Plaintiff was able to file other grievances during the period of time
between February of 2018 and September of 2019.  (Doc. No. 47-1.)  Thus, the Court concludes
that Plaintiff cannot excuse his failure to properly exhaust based upon the side effects he
experienced from his medications.

In sum, Plaintiff has not demonstrated that the continuing violations doctrine applies to
exhaust his claims via his 2004 grievance nor has he shown that the DOC's grievance procedure
was rendered unavailable to him on the basis that he was unable to timely file his grievances due
to the side effects from his medications.  Plaintiff, therefore, has not refuted the defense that he
failed to properly exhaust his claims against Defendants Stanishefski and Stanish.  Accordingly,
because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims
in federal court, and this Court cannot excuse compliance with those requirements, the Court will
grant Defendant Stanishefski and Stanish's motions for summary judgment on the basis that
Plaintiff failed to properly exhaust his administrative remedies as to his claims against them.

### H.    Claims Against Defendant Yarczower

As noted supra, Defendant Yarczower was served with Plaintiff's complaint on August 7,
2020.  (Doc. No. 59.)  To date, however, Defendant Yarzower has not entered an appearance in
the above-captioned case.  Nevertheless, "[a] § 1915A [screening] may be made at any time,
before or after service of process and before or after an answer is filed."  See Janowski v.
Williams, No. 12-3144 (FLW), 2015 WL 4171727, at *2 n.1 (D.N.J. July 10, 2015) (quoting
Loving v. Lea, No. 13-158, 2013 WL 3293655, at *1 (M.D. Pa. June 28, 2013)).

For the reasons discussed supra, Plaintiff's claims against Defendant Yarczower are also
barred by the doctrine of res judicata.  In his previous suit, Plaintiff alleged that Defendants
Mataloni, Diaz, and Yarczower violated his Eighth Amendment rights by demonstrating

deliberate indifference to his anal pain and discomfort.  See Glenn, 2005 WL 3159195, at *1.  At

that time, Plaintiff thought that his pain and discomfort was caused by a parasite.  See id.  Plaintiff

asserted that Defendants Mataloni, Diaz, and Yarczower had "prevented [him] from receiving

adequate medical diagnosis and treatment and denied access to a physician capable of evaluating

[his] needs."  See id. at *2.  In the instant suit, Plaintiff again maintains that Defendant Yarczower

violated his Eighth Amendment rights and committed medical malpractice by failing to

adequately diagnose and treat his anal pain and discomfort, which Plaintiff states was later

diagnosed as prostate cancer.  (Doc. No. 1.)  The Court previously concluded that Defendant

Yarczower was not deliberately indifferent to Plaintiff's medical care because "Plaintiff ha[d]

been given significant medical attention and [was] simply dissatisfied with the results."  See

Glenn, 2005 WL 3159195, at *3.  Plaintiff, therefore, "is precluded from relitigating the adequacy

of his medical care" provided by Defendant Yarczower.  See Tester, 2020 WL 2813607, at *7.

The Court, therefore, will dismiss Plaintiff's claims against Defendant Yarczower for failure to

state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915A(b)(1) &

1915(e)(2)(B)(ii).

I.      **Supplemental Jurisdiction**

At this point, what remains before the Court are Plaintiff's state law medical malpractice

claims against Defendants Stanishefski, Stanish, and Wexford.  When a district court has

dismissed all claims over which it had original jurisdiction, as is the case in the above-captioned

case, the Court may decline to exercise supplemental jurisdiction over the pendent state law

claims.  See 28 U.S.C. § 1367(c)(3).  The Court's decision regarding the exercise of supplemental

jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness,

and comity."  See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  Ordinarily, when

all federal claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court.  See id.  In the absence of a viable federal claim, and finding nothing to distinguish this matter from the ordinary case, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims."  See Cohill, 484 U.S. at 350 n.7.  Accordingly, the Court will dismiss Plaintiff's medical malpractice claims against Defendants Stanishefski, Stanish, and Wexford pursuant to 28 U.S.C. § 1367(c)(3).[11]

## VI.    CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. No. 33) filed by Defendants Chiavacci, Diaz, Stanish, and Wexford will be granted with respect to Plaintiff's claims against Defendants Chiavacci, Diaz, and Wexford and denied with respect to his claims against Defendant Stanish.  The motion to dismiss (Doc. No. 36) filed by Defendants Mataloni, Stanishefski, and the DOC will be granted with respect to Plaintiff's claims against Defendants Mataloni and the DOC and denied with respect to his claims against Defendant Stanishefski.  The motions for summary judgment (Doc. Nos. 38, 42) will be granted based upon Plaintiff's failure to exhaust his administrative remedies with respect to his § 1983 claims against Defendants Stanishefski and Stanish and denied as moot with respect to Defendants Diaz, Mataloni, Chiavacci, Wexford, and the DOC.  The motion to dismiss (Doc. No. 60) filed by Defendant PHS will be granted.  The Court will also dismiss Plaintiff's claims against Defendant Yarczower pursuant to 28 U.S.C. §§ 1915A(b)(1) & 1915(e)(2)(B)(ii).  Finally, Plaintiff's medical

---

[11] The Court notes that when a district court declines to exercise supplemental jurisdiction over state law claims, the statute of limitations is tolled while the federal suit is pending and for a period of thirty (30) days after the suit is dismissed.  See 28 U.S.C. § 1367(d); Hedges v. Musco, 204 F.3d 109, 123-24 (3d Cir. 2000).

malpractice claims against Defendants Stanishefski, Stanish, and Wexford will be dismissed

without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  An appropriate Order follows.